**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| CHERYL LEA BERRIER, | ) | CASE NO. 3:20-CV-01655-JZ |
| | ) | |
| Plaintiff, | ) | JUDGE JACK ZOUHARY |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **ORDER** |
| | ) | |

**I. Introduction**

Plaintiff, Cheryl Lea Berrier ("Berrier" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

**II. Procedural History**

On July 16, 2018, Claimant filed an application for SSI, alleging a disability onset date of July 6, 2018 and claiming she was disabled due to posttraumatic stress disorder, paranoia, lack of sleep, bipolar disorder, schizophrenia, emphysema/COPD, and asthma. (ECF No. 12, PageID #: 162-163). The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). On July 2, 2019, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF

1

No. 12, PageID #:101-139).  On September 27, 2019, the ALJ issued a written decision finding Claimant was not disabled.  (ECF No. 12, PageID #: 83-100).  The ALJ's decision became final on May 22, 2020, when the Appeals Council declined further review.  (ECF No. 12, PageID #: 72).

On July 27, 2020, Claimant filed her Complaint to challenge the Commissioner's final decision.  (ECF No. 1.)  The parties have completed briefing in this case. (ECF Nos. 14, 17, 18). Claimant asserts the following assignments of error:

1. The ALJ's RFC finding included an analysis of the mental health record and opinion evidence that is unsupported by substantial evidence due to an erroneous conclusion of overall improvement and a failure to develop the record.

2. The ALJ's RFC finding included an analysis of Plaintiff's subjective complaints that was not supported by substantial evidence due to an erroneous conclusion of overall improvement and a failure to consider reasons for a lack of therapy.

(ECF No. 14 at 3).

## III. Background

### A.  Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

[Claimant] testified that she last worked in 2018 at a work release center, and that she was on work release for four to five months after being incarcerated for the sale and delivery of methamphetamine. She reported she did not have a driver's license; that her boyfriend took her where she needed to go; that she lived with her fiancé and her mother, the latter of whom was in a wheelchair; and that she took care of her mother. In so doing, she indicated that she helped take care of her bed, clean up after herself, shower and bathe, prepare simple meals, and perform the household chores. She also reported watching television and playing games with her mother during the day. As for her impairments, she reported difficulty breathing, for which she was using an inhaler as needed, with the last use being three days prior to the hearing. She reported worsening of her breathing issues with temperature extremes. She

2

described some difficulty using her right hand due to carpal tunnel syndrome, but that she had never had surgery for same. Nonetheless, she reported she could button, use a zipper, cut food, and change the channel on a television remote, but that she had some difficulty reaching overhead. She also reported seeing a psychiatrist for her mental health impairments and that she did not have a counselor, but did have a case manager. She reported memory issues, anxiety, paranoia, hearing things, difficulty in crowds, and seeing shadows, but that she remembered to take her medication with her mother's help. Regarding complaints of headaches, she reported taking "goodie powder" once in the morning and once at night, but that she felt they had a side effect of thinning her blood and causing bruising. She also reported using aspirin if the "goodie powder" did not work. However, she testified she had not seen a doctor for her headaches.

(ECF No. 12, PageID #: 92).

## B. Function Report

The ALJ summarized Claimant's function report:

In her function report, the claimant described being forgetful, paranoia, difficulty around crowds, needing reminders to perform tasks, decreased motivation, and being paranoid about going outside. (Exhibit C3E). She also described difficulty concentrating, paying attention, following written instructions, getting along with authority figures, finishing what she started, and handling stress and changes in her routine. (Id.). Nonetheless, the claimant reported living with her mother and boyfriend, helping care for a family pet, no difficulty tending to her personal hygiene, preparing simple meals, performing light household chores, being able to use public transportation, grocery shopping with her mother, and no issues managing money. (Id.). She also described hobbies such as coloring, reading, watching television, and playing cards and other games, as well as following spoken instructions "somewhat good." (Id.).

(ECF No. 12, PageID #: 90).

## C. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

the record reflects that the claimant received mental health treatment from Aspire Health Partners in 2017 for a diagnoses of major depressive disorder with psychotic features and generalized anxiety disorder. (Exhibit C3F). For same, she was prescribed Vistaril,

3

Prozac, and Seroquel. (Id.). In July 2017, the claimant reported anxiety, depression, sadness, and decreased energy. (Id./16). Nonetheless, she was noted to have good memory and concentration, congruent mood and affect, congruent and organized thought content/process, no evidence of hallucinations, appropriate motor activity, cooperative behavior, and fair insight and judgment. (Id.). Her medications were adjusted per her subjective complaints. (Id./17. At her next appointment six weeks later, Buspar was added. (Id./21).

However, in October 2017, she reported taking three to four times the prescribed amount of Vistaril without a change in her symptoms, and requested benzodiazepines. (Id./24). She was encouraged to follow up with the psychiatrist. (Id./25). Thereafter, in January 2018, Seroquel was replaced with Risperdal, and mental status examination demonstrated good memory and concentration, congruent mood and affect, congruent and organized thought content/process, no evidence of hallucinations, appropriate motor activity, cooperative behavior, appropriate motor activity, and good insight and judgment. (Id./26).

On May 9, 2018, the claimant underwent a psychiatric evaluation. (Exhibit C3F/32-35). She reported anxiety, depression, paranoia, and substance abuse issues. (Id.). She also reported a history of abuse in a past marriage. (Id.). On admission, her urine drug screen was positive for benzodiazepam and cannabis. (Id.). She reported being in jail five times due to "pain medications" and it was noted she was aware that she had a serious problem with drug addictions. (Id.). She presented as anxious and somewhat fearful, though she was able to verbalize her thoughts and feelings. (Id.). She admitted to hearing voices and she appeared to have somewhat impaired memory. (Id.). She was to continue outpatient treatment and was referred to counseling. (Id.).

She then switched mental health providers to Zepf Center on June 6, 2018, upon her move from Florida to Ohio. (Exhibit C4F/7-20). She reported she had moved to Ohio to help her mother and brother, who were in ailing health. (Id.). She indicated she had a tenth grade education and that she had no intention to get her GED currently because she was taking care of her sick family members. (Id.). She reported a history of abuse and nightmares and flashbacks thereto; panic attacks, though she had difficulty identifying symptoms thereof; memory issues that she attributed to her past drug use; paranoia; difficulty in crowds; overthinking things; that she did not like to be alone; depression that will come and go; difficulty sleeping; decreased motivation; and anhedonia. (Id.). She also

4

reported drinking a couple of "tall boys" every other night to help her sleep and recent use of marijuana. (Id.). On mental status examination, she had a euthymic mood, was tangential and needed to be redirected, was oriented times four, and was heavily fixated on her past trauma and abusive relationships. (Id.). Assessment included mild alcohol use disorder, Other Specified Trauma- and Stressor-Related Differential Diagnosis – PTSD, Depression NOS, and Anxiety NOS. (Id.). She was referred for psychiatry evaluation, case management, and individual therapy. (Id.).

At her psychiatric evaluation two days later, the claimant was observed to have average eye contact, an anxious mood, full affect, clear speech, tangential thought process, paranoia, an erratic and inconsistent memory, and normal insight and judgment. (Id./21-28). She was continued on her previous medications, Seroquel was restarted, and Abilify was added to her medication regimen. (Id.).

Two months later, the claimant reported anxiety due to being thrown out of the home she was living in with her family, denied hallucinations and paranoia, was drinking two bottles of beer every two to three days, denied nightmares or flashbacks, and reported "a little bit" of depression, low energy and motivation, and being distracted easily. (Id./29-37). Clonidine was added to her medications and it was noted she declined therapy. (Id.). At her appointment on October 26, 2018, the claimant reported taking her medications as prescribed, mostly stable mood, caring for her mother, stable weight, good appetite, improved focus, low energy and motivation, paranoia in a crowd, decreased sleep, and seeing shadows at the corner of her eye, which she attributed to her lack of sleep. (Exhibit C8F/21-28). She also denied depression, anger, irritability, nightmares, and flashbacks. (Id.). On mental status examination, the claimant was oriented times four and had no agitation or anhedonia, was not anxious, had an appropriate mood and affect, had no compulsive behavior and a sufficient fund of knowledge, had no flight of ideas, was not forgetful or hopeless, had an appropriate affect, had no memory loss or mood swings, was not paranoid, had no pressured speech, and had normal insight, judgment, attention span and concentration. (Id.). Abilify was discontinued and Seroquel was increased. (Id.).

Most recently, on April 17, 2019, the claimant reported seeing shadows and hearing someone calling her name at night, stable mood, good energy, low motivation, better sleep, and denied depression, nightmares, flashbacks, or intrusive memories. (Exhibit C9F/29-36). She also reported a good appetite, improved focus, paranoia in big crowds, and forgetfulness. (Id.). She reported she

continued to drink one beer every three days, and she, again, declined therapy. (Id.). On mental status examination, the claimant was oriented times four and had no agitation or anhedonia, was not anxious, had an appropriate mood and affect, had no compulsive behavior and a sufficient fund of knowledge, had no flight of ideas, was not forgetful or hopeless, had an appropriate affect, had no memory loss or mood swings, showed no response to hallucinations, was not paranoid, had no pressured speech, and had normal insight, judgment, attention span and concentration. (Id.). No changes were made to her medication regimen. (Id.).

(ECF No. 12, PageID #: 93-94).

### D.  Relevant Opinion Evidence[1]

#### 1.  Courtney Zeune, PsyD – 9/13/2018

On September 13, 2018, State Agency reviewing psychologist Courtney Zuene reviewed Claimant medical records and determined that Claimant had a mild limitation in her ability to understand, remember, or apply information and moderate limitations in her ability to: interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (ECF No. 12, PageID #: 169). Specifically, with respect to Claimant's ability to concentrate, persist, or maintain pace, Dr. Zeune opined that Claimant was moderately limited in her ability to carry out detailed instructions and to maintain attention and concentration for extended periods. (ECF No. 12, PageID #: 173). Dr. Zeune opined that Claimant can perform one to four step tasks without demands for fast pace or high production quotas. (ECF No. 12, PageID #: 173). With respect to Claimant's social limitations, Dr. Zeune opined that she was moderately limited in her ability to interact appropriately with the general public as well as her ability to get along with coworker or peers. (ECF No. 12, PageID #: 174). Dr. Zeune opined that Claimant should have no interaction with the general public or crowds but is capable of superficial interaction with coworkers and

---

[1] Claimant's appeal only challenges the findings related to her mental impairments. Thus, the Court includes only the opinions related to her mental limitations.

supervisors. (ECF No. 12, PageID #: 174). With respect to Claimant's ability to adapt, Dr. Zeune opined that she was moderately limited in her ability to respond appropriately to changes in the work setting but that she can adapt to a setting in which duties are routine and predictable. (ECF No. 12, PageID #: 174).

### 2. Cynthia Waggoner, PsyD – 12/4/2018

State Agency reviewing psychologist Cynthia Waggoner reviewed Claimant's file upon reconsideration. Dr. Waggoner also opined that Claimant had a mild limitation in her ability to understand, remember, or apply information and moderate limitations in her ability to: interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. (ECF No. 12, PageID #: 186). Dr. Waggoner's specific findings were the same as those of Dr. Zeune. (ECF No. 12, PageID #: 190-191).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

2. The claimant has the following severe impairments: status-post right clavicular fracture; status-post fractures of left thumb and right ring finger; right carpal tunnel syndrome; and psychological conditions variously described as: bipolar disorder, schizoaffective disorder – bipolar type, generalized anxiety disorder, anxiety disorder NOS, PTSD/Other Specified Trauma- and Stressor-Related Differential Diagnosis - PTSD, major depressive disorder, depressive disorder NOS, and alcohol use disorder, mild. (20 CFR 416.920(c)).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: The claimant can frequently climb, crouch, kneel, stoop, and crawl. She can have occasional exposure to extreme cold, heat, and humidity along with dust, fumes, odors, gases, and other pulmonary irritants. With the dominant right upper extremity, she can occasionally reach overhead and can frequently handle and finger. She can occasionally work around unprotected heights. The claimant can understand, remember, and carry out simple, routine tasks, but not at a production rate pace such as required when working on an assembly line. She can make judgments on simple work and respond appropriately to usual work situations and changes in a routine work setting that is repetitive from day to day with few and expected changes. She cannot interact with the general

7

public and can only be in the proximity of the general public on a rare (defined as 10 percent or less of the workday day) basis. She can have occasional interaction with supervisors and coworkers with no team or tandem tasks.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 16, 2018, the date the application was filed (20 CFR 416.920(g)).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises two issues on appeal: 1) whether the RFC analysis is supported by substantial evidence; and 2) whether the ALJ properly evaluated Claimant's subjective impairments. Within the first issue, Claimant argues: a) that the ALJ's finding of overall improvement is unsupported by substantial evidence; b) that the ALJ failed to properly develop the record by not ordering a consultative examination; and c) that the ALJ failed to adequately explain her decision that the medical evidence submitted after the State Agency reviewing

9

psychiatrists gave their opinions supported a greater limitation than that opined by the reviewing psychiatrists.

### 1.  Substantial evidence supports the RFC

#### a.  Substantial evidence supports the ALJ's finding of overall improvement.

Claimant argues that the ALJ finding's that Claimant's mental health symptoms largely abated and/or improved when compliant with her medications is unsupported by the medical record. The Court disagrees.

First, Claimant herself acknowledges at least some improvement. (ECF No. 14 at 18 ("Plaintiff's condition showed some improvements, but overall her condition was progressive.")). Second, the medical records indicate that many of Claimant's symptoms were improving. On June 8, 2018, despite complaints of ongoing depression and anxiety, Claimant stated that she "never felt better in her whole life[.]" (ECF No. 12, PageID #: 568). On July 6, 2018, Claimant denied depression. (ECF No. 12, PageID #: 584). At a follow up on August 8, 2018 she indicated she was only a "little bit" depressed. (ECF No. 12, PageID #: 575). Although many of Claimant's symptoms wax and wane over the course of her treatment at Zepf, Claimant also reported that she no longer suffered from depression, flashbacks, nightmares, or intrusive memories, and had a mostly stable mood. (ECF No. 12, PageID #:  750, 758, 766, 771, 774, 783). By April 19, 2019, Claimant denied depression, had a good level of energy, was sleeping 12 hours a night, and had improved focus. (ECF No. 12, PageID #:751-752).

The Court further notes that the ALJ's decision discussed Claimant's improvement in its review of Claimant's most recent mental health record, which included normal psychological exam findings. (ECF No. 12, PageID #:94; PageID: #: 755). The ALJ did not find that Claimant was healed. In fact, the ALJ found that Claimant was moderately limited in each of the four mental

functioning areas and incorporated those limitations in the RFC. Moreover, the ALJ acknowledged that Claimant still experienced symptoms: "This is not to say that the claimant was symptom free or did not experience difficulty performing some tasks. However, the objective evidence does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the alleged onset date of disability." (ECF No. 12, PageID #: 95).

Accordingly, substantial evidence supports the ALJ's finding of overall improvement. If substantial evidence supports the ALJ's decision, the decision must stand even if the evidence could support an opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Her v. Commissioner*, 203 F.3d 388, 389-390 (6th Cir. 1999). The court will not reweigh the evidence.

### b.  ALJ's Duty to Develop the Record

Claimant argues that "the ALJ should have ordered a consultative examination as permitted under 20 C.F.R. § 416.919a(b)." (ECF No. 14 at 18 (relying on *Branscum v. Berryhill*, No. 6:17-CV-345-HAI, 2019 WL 475013, at *13 (E.D. Ky. Feb. 6, 2019) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008))). The Commissioner's main response is that "it is surprising that [Claimant] now argues that the record is not developed (Pl. Br., pp. 12-16), when during the administrative hearing, the attorney indicated that the record was complete, and there were no other opinions other than those of the state agency consultants (Tr. 34)."

The ALJ has a basic obligation to develop a full and fair record. *Lashley v. Sec'y of Health and Hum. Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983). However, the Sixth Circuit has repeatedly held that the ALJ's duty to develop the record does not require the ALJ to order a consultative examination. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 263 (6th Cir. 2015) (collecting cases).

11

In *Deskin*, a sister court reviewed a case in which there was only one medical opinion from a state agency reviewing physician who reviewed the record two years before the ALJ made an RFC finding and without the benefit of two years' worth of medical records. 605 F. Supp. 2d 908. The *Deskin* court set forth the following rule:

> ...[when] the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases [in which] the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.

*Id*. at 912 (quotation marks and citation omitted). After some criticism from other district courts in the Sixth Circuit, the *Deskin* court clarified its decision. *See Kizys v. Comm'r of Soc. Sec*., No. 3:10-cv-25, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011). *Kizys* clarified that *Deskin* potentially applies in only two circumstances: 1) when an ALJ made an RFC determination based on no medical source opinion; or 2) when an ALJ made an RFC based on an "outdated" medical source opinion "that does not include consideration of a critical body of objective medical evidence." *See Kizys*, 2011 WL 5024866, at *2; *see also Raber v. Comm'r of Soc. Sec*., No. 4:12-cv-97, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013) (explaining post-*Deskin* application of the rule). Although not controlling, some courts have found that "[g]iven the persuasive authority of *Deskin* and the decade-plus of cases that have applied the *Deskin* 'rule,' … in some circumstances, an ALJ is required to obtain a medical opinion in furtherance of his 20 CFR § 404.1545(a)(3) responsibility to develop the record." *Falkosky v. Comm'r of Soc. Sec*., No. 1:19-CV-2632, 2020 WL 5423967, at *6 (N.D. Ohio Sept. 10, 2020). ""Without doubt, it is the ALJ's responsibility (not a physician's) to determine a claimant's RFC based on the evidence as a whole. Equally clear is the claimant's

12

burden to produce evidence in support of his claim." *Id*. "[O]nce it is determined that the evidence supports a finding of a severe impairment, the ALJ may be obligated to develop a record that provides substantial evidence supporting his or her RFC finding. The question then becomes, 'did the ALJ have a responsibility to further develop the record in this case?'" *Id*. However, "[o]ther courts within this District have [ ] declined to follow *Deskin*." *Adams v. Colvin*, No. 1:14CV2097, 2015 WL 4661512, at *15 (N.D. Ohio Aug. 5, 2015) (citing *Jackson v. Comm'r of Soc. Sec.*, 2014 WL 2442211 at * 6 (N.D. Ohio May 30, 2014) (McHargh, M.J.); *Williams v. Astrue*, 2012 WL 3586962 at * 7 (N.D. Ohio Aug. 20, 2012) (Vecchiarelli, M.J.); *Strimpel v. Astrue*, 2012 WL 4060744 at * 9 (N.D. Ohio Sept. 14, 2012) (Vecchiarelli, M.J.)).

Claimant's appeal potentially involves the second *Deskin* circumstance because although there were two medical opinions, Claimant argues that evidence submitted after those opinions supported greater limitations than those opined by the reviewing psychologists' opinions. This Court need not decide whether to adopt *Deskin* as clarified in *Kizys* because the instant case falls outside the "narrow rule" set forth in those decisions. In particular, Claimant has not demonstrated that the RFC is flawed because of a "critical body of objective medical evidence" post-dating the medical source opinions considered by the ALJ. Additionally, unlike the two years of medical treatment in *Deskin*, only five months of medical evidence followed the final state agency review of Claimant's medical records. Other courts have declined to remand for updated medical opinions under similar circumstances. *See e.g. Jackson*, 2014 WL 2442211 at * 7–8 (distinguishing *Deskin* on the grounds that less than one year of medical evidence followed the final state agency review of claimant's medical records and that evidence showed some improvement); *Raber*, 2013 WL 1284312 at * 17 (distinguishing *Deskin* because "the evidence related to [Raber's] condition after the consultative review covered roughly eleven months and showed she was reporting

13

improvement or relief through treatment and did not want surgery."). Here, subsequent to Dr. Waggoner's December 4, 2018 opinion, Claimant's subjective complaints included continued paranoia, hallucinations, and anxiety; however, as discussed above, the objective medical records support a finding of overall improvement of Claimant's symptoms.

The ALJ did not err by failing to order a consultative examination to opine on the post-opinion records. First, the ALJ properly and fully considered the opinions of Dr. Zeune and Dr. Waggoner who reviewed Claimant's records and found mild to moderate limitations in her mental functioning.[2] The objective records indicated that Claimant's symptoms had either improved or stayed the same as her symptoms reviewed by the State Agency psychologists. Second, the post-opinion medical records do not include any new diagnostic testing, extensive evaluations, or any significant changes to Claimant's psychiatric state. Although Claimant presented with a new symptom of tremors during this time, the records indicate that tremors dissipated with the decrease in her medication.[3] Overall, the evidence following Dr. Waggoner's opinion was not enough to constitute a "critical body of objective medical evidence" such that the ALJ erred by failing to further expand the record. *See Kizys*, 2011 WL 5024866 at *2. Accordingly, the medical source opinions of Drs. Zeune and Waggoner properly served as "a guide to peg a residual functional capacity." *Kizys*, 2011 WL 5024866, at *2.

---

[2] Claimant does not challenge the ALJ's finding that the State Agency reviewing psychologists' opinions were "generally persuasive" as "largely consistent with the medical evidence." (See ECF No. 12). Claimant's challenge is that the ALJ should have ordered an additional in-person exam based on the evidence submitted after the reviewing psychologists' opinions had been rendered.

[3] Claimant indicates that auditory hallucinations were a new symptom. (ECF No. 14 at 15-16). However, Claimant had complained about auditory hallucinations previously (*see* ECF No. 12, PageID #: 568) and such complaints were reviewed by the State Agency reviewing psychologists.

Finally, "an ALJ is not required to refer a claimant for a consultative examination unless the record establishes that such an examination 'is necessary to enable the administrative law judge to make the disability decision.'" *Williams*, 2012 WL 3586962 at * 8 (quoting *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986))). Pursuant to 20 C.F.R. § 404.1519a(b), a consultative examination may be purchased "to try and resolve an inconsistency or when the evidence as a whole is insufficient to support a determination or decision ..." However, "[t]he plain language of the statute clearly places the decision to order a consultative examination within the discretion of the ALJ." *Evans v. Astrue*, 2010 WL 5488525 at * 5 (E.D. Tenn. Nov.22, 2010), *report and recommendation adopted*, 2011 WL 13453 (E.D. Tenn. Jan. 4, 2011); *see also Lucas v. Comm'r of Soc. Sec.*, 2013 WL 1150019 at * 1 (N.D. Ohio Mar. 19, 2013) ("Ordering a consultive exam lies in the discretion of the ALJ."). Claimant has not demonstrated that a consultative examination was necessary to enable the ALJ to make the disability decision, particularly in light of Claimant's relatively unchanged and even improved psychiatric condition.

### c.  The ALJ adequately explained her analysis of the medical opinions.

Claimant argues that the ALJ failed to build a logical bridge between the medical evidence and the RFC. Specifically, Claimant argues "the ALJ conceded that evidence submitted after the non-examining opinions supported greater limitation in understanding, remembering, or applying information [but failed to explain] what the greater limitations are and why they are." (ECF No. 14 at 16).

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion.

42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

> Here, the ALJ determined Claimant's RFC as follows:

> > to perform light work as defined in 20 CFR 416.967(b) except: The claimant can frequently climb, crouch, kneel, stoop, and crawl. She can have occasional exposure to extreme cold, heat, and humidity along with dust, fumes, odors, gases, and other pulmonary irritants. With the dominant right upper extremity, she can occasionally reach overhead and can frequently handle and finger. She can occasionally work around unprotected heights. The claimant can understand, remember, and carry out simple, routine tasks, but not at a production rate pace such as required when working on an assembly line. She can make judgments on simple work and respond appropriately to usual work situations and changes in a routine work setting that is repetitive from day to day with few and expected changes. She cannot interact with the general public and can only be in the proximity of the general public on a rare (defined as 10 percent or less of the workday day) basis. She can have occasional interaction with supervisors and coworkers with no team or tandem tasks.

(ECF No. 12, PageID #: 91). In determining Claimant's RFC, the ALJ considered the opinion evidence of the state agency psychological consultants, Dr. Zeune and Dr. Waggoner, that Claimant had mild-to-moderate mental limitations, and reasonably found that they were persuasive because they were consistent with the medical evidence. 20 C.F.R. § 416.920c(b)(2) (ECF No. 12, Page ID #: 90-91).  In weighing the opinion evidence, the ALJ followed the articulation requirements of 20 C.F.R. § 416.920c(b)(2), which requires an ALJ to explain how he or she considered the factors of supportability and consistency. Although Claimant cites to the new

regulations for evaluating medical opinions, she does not provide any argument challenging the ALJ's finding that the State Agency reviewing psychologists' opinions were "generally persuasive" and "largely consistent with the medical evidence." (*See* ECF No. 12).

With respect to the reviewing psychologists' opinions, the ALJ wrote:

> In the psychiatric review, the state agency psychological consultants opined that the claimant had a mild limitation in understanding, remembering, or applying information, moderate limitations interacting with others, a moderate limitation concentrating, persisting, or maintaining pace, and a moderate limitation adapting or managing oneself. (Exhibits C3A & C5A). The undersigned finds these opinions generally persuasive because they are largely consistent with the medical evidence; however, the undersigned has provided for moderate limitations in understanding, remembering, or applying information based on additional medical evidence submitted after these opinions were rendered.

(ECF No. 12, Page ID #: 90-91). The ALJ's decision explicitly described how she considered all the medical evidence and the State agency reviewing psychologists' opinions when determining the RFC, and thus provided substantial evidence to support her findings. The ALJ took Claimant's mental limitations into consideration when crafting the RFC including the following limitations:

> The claimant can understand, remember, and carry out simple, routine tasks, but not at a production rate pace such as required when working on an assembly line. She can make judgments on simple work and respond appropriately to usual work situations and changes in a routine work setting that is repetitive from day to day with few and expected changes. She cannot interact with the general public and can only be in the proximity of the general public on a rare (defined as 10 percent or less of the workday day) basis. She can have occasional interaction with supervisors and coworkers with no team or tandem tasks.

(ECF No. 12, PageID #: 91). Ultimately, the RFC incorporated each of the State Agency reviewing psychologists' findings and was even more restrictive than what the reviewing psychologists found. Claimant does not set forth any argument as to how the record supports greater than moderate limitations in these functional areas. However, even if the ALJ erred by failing to explain

17

why she found Claimant to be more limited than the medical experts opined, the error is harmless as it was in Claimant's favor.

Accordingly, the Court finds that substantial evidence supports the RFC.

### 2. Claimant's Subjective Complaints

Claimant states that the ALJ failed to consider the reasons that Claimant declined therapy and, thus, failed to support her analysis of Claimant's subjective complaints with substantial evidence. (ECF No. 14 at 16). The Court finds no error.

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs*., 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304. Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR

18

16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248-49), *report and recommendation adopted* by 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Specifically, Claimant argues:

> The ALJ should have inquired as to why Plaintiff did not accept referral to therapy. Since the ALJ did not inquire, we are left to speculation instead of making a decision based upon substantial evidence. Maybe, akin to the side-effects example from SSR 16-3p, Plaintiff was afraid to confront her past traumas in a therapy setting. Maybe it was due to cost. October 25, 2017, Plaintiff did not have insurance. T 465. She obtained insurance in or about July 2018. T 545. We do not know much about the insurance, but we do know that it did not cover everything. T 601 (September 28, 2018, Plaintiff's insurance would not cover Silenor). Presumably, Plaintiff had a co-pay to worry about. Nonetheless, Plaintiff did continue to work with Dr. Penarada on medication optimization in an effort to help herself. The ALJ could not have legitimately used lack of therapy as condemnatory of Plaintiff's subjective complaints.

(ECF No. 14 at 20).

SSR 16-3p permits an ALJ to "find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record," where "the individual fails to follow prescribed treatment that might improve symptoms." Still, the ALJ may not reach this conclusion "without considering possible reasons [the claimant] may not comply with treatment," including that an "individual may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.*; *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

19

The ALJ's decision referenced Claimant's refusal to attend therapy during her August 2018 and April 2019 treatments at Zepf Center. (ECF No. 12, PageID #: 90, 94). During the hearing, the ALJ confirmed that Claimant had Buckeye Health Insurance beginning in July 2018. (ECF No. 12, Page ID #: 110). The ALJ did not inquire as to any of the reasons that Claimant declined therapy, and there is no mention in the ALJ's decision as to whether she considered any reasons for why Claimant declined therapy. However, the records considered by the ALJ indicate Claimant's refusal to attend therapy was a personal preference and not cost related. (ECF No. 12, PageID #: 565 (Claimant was agreeable to psychiatry and case management, but declined therapy stating that she wanted to get used to the center before beginning therapy with them.)).

In addition to citing Claimant's refusal to attend therapy, the ALJ provided many other reasons for discounting Claimant's credibility. Thus, even without the ALJ's inquiry and discussion of the reasons that Claimant declined therapy, "there is substantial evidence to support the ALJ's decision." *Scharmer v. Comm'r of Soc. Sec.,* No. 1:18-CV-00872, 2020 WL 1861869, at *8 (W.D. Mich. Apr. 14, 2020) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) ("harmless error analysis applies to credibility determinations in the social security disability context")). The fact that Claimant received only conservative treatment is properly considered as evidence that can weigh against allegations of disabling symptoms. *See McKenzie v. Comm'r of Soc. Sec.*, 215 F.3d 1327, 2000 WL 687680, at *4 (6th Cir. 2000) ("Plaintiff's complaints of disabling pain are undermined by his non-aggressive treatment."); *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638–39 (6th Cir. 2016) (ALJ was entitled to consider plaintiff's relatively conservative treatment in analyzing her subjective complaints); *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek

20

examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.").

The ALJ provided a unified statement of reasons for discounting Claimant's credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause she testified that some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(ECF No. 12, PageID #: 92). The ALJ also discussed Claimant's mental impairments and symptoms at length. (*See* ECF No. 12, PageID #: 92). For example, the ALJ noted that Claimant reported "memory issues, anxiety, paranoia, hearing things, difficulty in crowds, and seeing shadows, but that she remembered to take her medication with her mother's help" (ECF No. 12, PageID #: 92) and that in her medical records "she was noted to have good memory and concentration, congruent mood and affect, congruent and organized thought content/process, no evidence of hallucinations, appropriate motor activity, cooperative behavior, and fair insight and judgment." (ECF No. 12, PageID #: 93). Claimant later "demonstrated good memory and concentration, congruent mood and affect, congruent and organized thought content/process, no evidence of hallucinations, appropriate motor activity, cooperative behavior, appropriate motor activity, and good insight and judgment. (ECF No. 12, PageID #: 93). The ALJ also pointed out that in Claimant's most recent medical records regarding her mental impairments, she indicated her mood was stable and she had improved focus. (ECF No. 12, PageID #: 94). Further, the ALJ noted that

> on mental status examination, the claimant was oriented times four and had no agitation or anhedonia, was not anxious, had an appropriate mood and affect, had no compulsive behavior and a sufficient fund of knowledge, had no flight of ideas, was not

21

> forgetful or hopeless, had an appropriate affect, had no memory loss or mood swings, showed no response to hallucinations, was not paranoid, had no pressured speech, and had normal insight, judgment, attention span and concentration. (Id.).

(ECF No. 12, PageID #: 94).

The ALJ also discussed Claimant's prescription medications and noted changes made to address Claimant's symptoms. (*See* ECF No. 12, PageID #: 93 ("Her medications were adjusted per her subjective complaints."); PageID #: 94 ("She was continued on her previous medications, Seroquel was restarted, and Abilify was added to her medication regimen. (Id.)." "Abilify was discontinued and Seroquel was increased." "No changes were made to her medication regimen."). After a thorough examination of Claimant's treatment and medications, the ALJ explained

> Although the evidence establishes underlying medical conditions capable of producing some limitations, the substantial evidence of record does not confirm disabling limitations arising from these impairments, nor does it support a conclusion that the objectively determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling limitations. In reaching this conclusion, the undersigned took into consideration the entirety of the medical record, the opinion evidence, and the statements of the claimant at hearing and found in disability and functions reports. Significantly, the record reflects that the claimant's mental health symptoms largely abated and/or improved when compliant with her medications. Additionally, but for some follow up with her primary care provider and brief hospitalizations unrelated to her severe impairments, the claimant has not received any significant care or received any referrals to any specialists for her physical impairments during the relevant period. This is not to say that the claimant was symptom free or did not experience difficulty performing some tasks. However, the objective evidence does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the alleged onset date of disability.

(ECF No. 12, PageID #: 94-95). Elsewhere, the ALJ noted Claimant's daily activities and that "she lived with her fiancé and her mother, the latter of whom was in a wheelchair; and that she

took care of her mother. In so doing, she indicated that she helped take care of her bed, clean up after herself, shower and bathe, prepare simple meals, and perform the household chores. She also reported watching television and playing games with her mother during the day." (ECF No. 12, PageID #: 92; *see also* PageID #: 90 ("the claimant reported living with her mother and boyfriend, helping care for a family pet, no difficulty tending to her personal hygiene, preparing simple meals, performing light household chores, being able to use public transportation, grocery shopping with her mother, and no issues managing money. (Id.). She also described hobbies such as coloring, reading, watching television, and playing cards and other games, as well as following spoken instructions 'somewhat good.'")).

The ALJ's decision satisfies the Court that the ALJ considered the relevant evidence and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding. There exists, therefore, no compelling reason for the Court to disturb that finding. *Cross,* 373 F. Supp. 2d at 732.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

 Dated: September 10, 2021

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).